Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KADE ROSS,<br><br>Plaintiff,<br><br>v.<br><br>CASTLE BRANDS INC., MARK ANDREWS, III, JOHN F. BEAUDETTE, HENRY C. BEINSTEIN, PHILLIP FROST, RICHARD M. KRASNO, RICHARD J. LAMPEN, STEVEN D. RUBIN, and MARK ZEITCHICK,<br><br>Defendants. | Case No:<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kade Ross ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.	This is an action against Castle Brands Inc. ("Castle Brands" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated thereunder by the SEC,

1

17 C.F.R. § 240.14d-9, in connection with the proposed acquisition of Castle Brands by Austin, Nichols & Co., Inc. ("Austin") through its wholly-owned subsidiary, Rook Merger Sub, Inc. (the "Proposed Transaction").[1]

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misleading statements entered and subsequent damages took place within this District, and/or Defendants conduct substantial business in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Castle Brands common stock.

7. Defendant Castle Brands, together with its subsidiaries, develops, markets, imports, and sells beverage alcohol and non-alcoholic beverage products in the United States,

---

[1] Austin is the U.S. holding company of the U.S. subsidiaries of Pernod Ricard S.A. ("Pernod").

Canada, Europe, and Asia. The Company has an established distribution network in all 50 U.S. states. Castle Brands is incorporated in Florida with principal executive offices located in New York, New York. Castle Brands' common stock trades on the NYSE American under the ticker symbol, "ROX."

8. Defendant Mark Andrews, III ("Andrews") is the Chairman of the Board of Castle Brands.

9. Defendant John F. Beaudette ("Beaudette") is a director of Castle Brands.

10. Defendant Henry C. Beinstein ("Beinstein") is a director of Castle Brands.

11. Defendant Phillip Frost ("Frost") is a director of Castle Brands.

12. Defendant Richard M. Krasno ("Krasno") is a director of Castle Brands.

13. Defendant Richard J. Lampen ("Lampen") is the President, Chief Executive Officer, and a director of Castle Brands.

14. Defendant Steven D. Rubin ("Rubin") is a director of Castle Brands.

15. Defendant Mark Zeitchick ("Zeitchick") is a director of Castle Brands.

16. Defendants Andrews, Beaudette, Beinstein, Frost, Krasno, Lampen, Rubin, and Zeitchick are collectively referred to herein as the "Individual Defendants."

17. Defendants Castle Brands and the Individual Defendants are collectively referred to herein as the "Defendants."

**OTHER RELEVANT ENTITIES**

18. Austin is a Delaware corporation and an affiliate of Pernod. Austin is the U.S. holding company of the U.S. subsidiaries of Pernod.

19. Pernod is the second largest company in the global spirits business. Pernod's brand portfolio includes the following: Absolut Vodka, Ricard pastis, Ballantine's, Chivas Regal, Royal

3

Salute, and The Glenlivet Scotch whiskies, Jameson Irish whiskey, Martell cognac, Havana Club rum, Beefeater gin, Malibu liqueur, Mumm and Perrier-Jouët champagnes, as well Jacob's Creek, Brancott Estate, Campo Viejo, and Kenwood wines.

## SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and the Proposed Transaction

20. Castle Brands develops and markets premium and super premium brands of the following alcohol beverages: rum, whiskey, liqueurs, and vodka. Castle Brands also develops and markets non-alcoholic beverage products, including ginger beer. Castle Brands distributes its products in all 50 U.S. states and the District of Columbia and in thirteen primary international markets, including Ireland, Great Britain, Northern Ireland, Germany, Canada, France, Finland, Norway, Sweden, Holland, and the Duty Free markets.

21. The Company's brands include the following: Jefferson's®, Jefferson's Presidential Select™, Jefferson's Reserve®, Jefferson's Ocean Aged at Sea Bourbon®, Jefferson's Wine Finish Collection and Jefferson's Wood Experiments, Goslings® Rums, Goslings® Stormy Ginger Beer, Knappogue Castle Whiskey®, Clontarf® Irish Whiskey, Pallini® Limoncello, Boru® Vodka, Brady's® Irish Cream, The Arran Malt® Single Malt Scotch Whisky, The Robert Burns Scotch Whisky and Machrie Moor Scotch Whisky.

22. The Company has an 80.1% ownership stake in Gosling-Castle Partners Inc. ("GCP"), a strategic export venture with the Goslings family, which owns the remaining 19.9% interest. GCP has the exclusive long-term export and distribution rights for the Goslings rum products for all countries other than Bermuda.

23. The Company's outlook and growth prospects have been positive. In June 2019, the Company reported fourth quarter and fiscal year 2019 earnings. The Company reported net

4

sales of $26.9 million during the quarter, an 11.7% increase year-over-year. The Company also experienced increased case sales growth of 20.6% in its Jefferson's bourbons over the prior fiscal year. In fact, Defendant Lampen boasted how "[t]his was an outstanding year for Castle Brands. Continued growth of our more profitable brands, such as Jefferson's, Goslings and Knappogue Irish whiskey, resulted in continued growth in revenue and gross profit. Importantly, we reported positive net income per share for the fiscal year for the first time in the Company's history and had a record level of EBITDA, as adjusted. . . . We expect the strong growth in Jefferson's to continue to drive our long-term trends of increasing sales and improving financial performance."

24. Despite this positive outlook, on August 28, 2019, Castle Brands and Pernod issued a press release announcing that they had entered into a definitive merger agreement whereby Pernod, through a subsidiary, would commence a tender offer to purchase all outstanding common stock of Castle Brands for $1.27 per share in cash. Such a transaction would deprive Castle Brands shareholders the opportunity to reap the benefits of Castle Brands' future growth and prospects. The press release states, in pertinent part:

**Pernod Ricard to Acquire Castle Brands for $223 Million**

*Castle Brands Shareholders to Receive $1.27 Per Share in Cash, Representing 92% Premium to Castle Brands Share Price and 109% Premium to 30-Day Volume Weighted Average Share Price*

August 28, 2019 06:07 PM Eastern Daylight Time

PARIS & NEW YORK--(BUSINESS WIRE)--Pernod Ricard (Euronext Ticker RI; ISIN Code: FR0000120693) and Castle Brands Inc. (NYSE American: ROX), today announced that they have entered into a definitive agreement under which Pernod Ricard, through a subsidiary, will acquire all of the outstanding common stock of Castle Brands for $1.27 per share in cash, or approximately $223 million, plus the assumption of debt, through a cash tender offer followed by a merger.

Under the terms of the merger agreement, which has been unanimously approved by the Castle Brands Board of Directors, Castle Brands shareholders will receive

$1.27 in cash for each outstanding share of Castle Brands common stock they own[.]

*   *   *

The merger agreement provides for a cash tender offer to acquire all outstanding shares of Castle Brands to be launched shortly. The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of Castle Brands' outstanding shares, early termination or expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act, and other customary conditions. Once the tender offer is successfully completed, Pernod Ricard will acquire all shares not acquired in the tender offer through a second-step merger in which the holders of the outstanding shares of Castle Brands common stock not tendered in the offer will receive the same per share price paid in the tender offer, in cash. The transaction is expected to close in the fourth quarter of 2019.

BofA Merrill Lynch acted as financial advisor to Pernod Ricard and Debevoise & Plimpton LLP acted as its legal advisor. Perella Weinberg Partners and Houlihan Lokey acted as financial advisors to Castle Brands, Holland & Knight LLP acted as Castle Brands' legal advisor, and Sullivan & Cromwell LLP acted as legal advisor to Castle Brands' financial advisors.

25. On September 11, 2019, Castle Brands filed with the SEC a Schedule 14D-9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") in connection with the Proposed Transaction.

### B. The Solicitation Statement Contains Materially False and Misleading Statements and Omissions

26. The Solicitation Statement, which recommends that Castle Brand shareholders tender their shares in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Castle Brands' financial projections; (ii) the financial analyses performed by Castle Brands' financial advisors, Perella Weinberg Partners LP ("Perella Weinberg") and Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), in connection with their fairness opinions; (iii) the sales process leading up to the Proposed Transaction; (iv) conflicts of interest involving Perella Weinberg; and (v) potential conflicts of interest involving Perella

Weinberg and Houlihan Lokey.

27. The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Background of the Offer and the Merger; (ii) Reasons for Recommendation; (iii) Certain Prospective Financial Information (Unaudited); and (iv) Opinions of the Company's Financial Advisors.

28. The tender offer is currently set to expire on October 8, 2019 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to allow them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Castle Brands' Financial Projections

29. The Solicitation Statement omits material information concerning Castle Brands' financial projections.

30. The Solicitation Statement states that, "[o]n June 28, 2019 . . . [t]he Company's management provided the Board with certain prospective internal financial statements and analyses, and forecasts, including financial projections prepared by the Company's management relating to the Company for the fiscal years ending 2020 through 2022 (the "Company Forecasts")."[2] The Solicitation Statement provides "[a] summary of the Company Forecasts[.]"

---

[2] The Solicitation Statement provides that "the Board [] made available the Company Forecasts to [Austin] . . . as part of their due diligence of the Company, as well as to Perella Weinberg and Houlihan Lokey for purposes of performing their financial analyses and rendering their opinions."

7

31. The Solicitation Statement, however, fails to disclose the following concerning the Company Forecasts: (1) all line items used to calculate (i) CAMP (contribution after marketing and promotion), (ii) EBITDA, and (iii) Unlevered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

32. When a company discloses non-GAAP financial metrics in a Solicitation Statement that was relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[3]

33. The disclosure of Castle Brands' projected financial information is material because it would provide Castle Brands shareholders with a basis to project the future financial performance of Castle Brands and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the

---

[3] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Sept. 18, 2019) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

Company. Without such information, which is uniquely possessed by Castle Brands and its financial advisors, Castle Brands shareholders are unable to determine how much weight, if any, to place on the financial advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

34. Accordingly, in order to bring the Solicitation Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of the Company Forecasts, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Castle Brands must also disclose the line item projections that were used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Solicitation Statement not misleading.

35. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Castle Brands shareholders.

### 2. Material Omissions Concerning Perella Weinberg's and Houlihan Lokey's Financial Analyses

36. In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning the analyses performed by Perella Weinberg and Houlihan Lokey.

37. The Solicitation Statement fails to disclose the following concerning Perella Weinberg's "*Research Analyst Price Targets*" analysis: (1) the source of the one-year price target observed; and (2) the individual inputs and assumptions underlying the 12.5% cost of equity.

38. The Solicitation Statement fails to disclose the following concerning Perella Weinberg's "*Selected Publicly Traded Companies Analysis*": (1) Perella's basis for applying ranges of multiples of 15.0x to 19.0x to fiscal year 2020 estimated EBITDA and 13.5x to 18.0x to fiscal year 2021 estimated EBITDA; (2) the value of the 19.9% non-controlling interest in GCP, debt, cash, cash equivalents, and investments; and (3) the fully diluted shares of the Company.

9

39. The Solicitation Statement fails to disclose the following concerning Perella Weinberg's "*Selected Transactions Analysis*": (1) Perella Weinberg's basis for its opinion that the "selected transactions [were] relevant" to the Proposed Transaction; (2) the individual inputs and assumptions underlying (i) the range of multiples of 3.0x to 4.5x to the last twelve months net sales of the Company in the Company Forecasts, and (ii) the range of multiples of 9.0x to 13.0x to the last twelve months CAMP of the Company in the Company Forecasts; (3) the value of the 19.9% non-controlling interest in GCP, debt, cash, cash equivalents, and investments; and (4) the fully diluted shares of the Company.

40. The Solicitation Statement fails to disclose the following concerning Perella Weinberg's "*Sum-of-the-Parts Analysis*": (1) all line items used to calculate LTM Camp and all underlying assumptions thereto for each of the Company's brands; (2) the value of the 19.9% non-controlling interest in GCP, debt, cash, cash equivalents, and investments; and (3) the fully diluted shares of the Company.

41. The Solicitation Statement fails to disclose the following concerning Perella Weinberg's "Discounted Cash Flow Analysis": (1) all line items used to calculated unlevered free cash flow; (2) the individual inputs and assumptions underlying (i) the discount rates ranging from 10.0% to 13.0%, and (ii) terminal value multiples ranging from 14.0x to 18.0x; (3) the terminal values of the Company; (4) the value of the 19.9% non-controlling interest in GCP, debt, cash, cash equivalents, and investments; and (5) the number of fully diluted shares of the Company as provided by management of the Company.

42. The Solicitation Statement fails to disclose the following concerning Houlihan Lokey's "*Selected Companies Analysis*": (1) Houlihan Lokey's basis for applying ranges of 17.0x to 21.0x to the Company's FY 2020E EBITDA and 16.0x to 20.0x to the Company's estimated

FY 2021E EBITDA; (2) the cash, cash equivalents, restricted cash, equity method investments, present value of federal tax savings from net operating losses ("NOLs"), debt, and non-controlling interests; and (3) the fully diluted shares of the Company as provided by Company management.

43. The Solicitation Statement fails to disclose the following concerning Houlihan Lokey's "*Discounted Cash Flow Analysis*": (1) all line items used to calculated unlevered free cash flow; (2) the individual inputs and assumptions underlying (i) the discount rates ranging from 11.50% to 14.50%, and (ii) the range of terminal value multiples of 14.0x to 20.0x to the Company's FY 2022E EBITDA in the Company Forecasts; (3) the cash and cash equivalents and restricted cash, equity method investments, the present value of federal tax savings from the NOLs, debt, and non-controlling interests, as provided by management of the Company; and (4) the number of fully diluted shares of the Company as provided by management of the Company.

44. The valuation methods, underlying assumptions, and key inputs used by Perella Weinberg and Houlihan Lokey in rendering their purported fairness opinions must be fairly disclosed to Castle Brands shareholders. The description of Perella Weinberg's and Houlihan Lokey's fairness opinions and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Castle Brands shareholders are unable to fully understand Perella Weinberg's and Houlihan Lokey's fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Castle Brands shareholders.

3. **Material Omissions Concerning the Sales Process Leading to the Proposed Transaction**

45. The Solicitation Statement omits material information concerning the sales process

11

leading up to the Proposed Transaction.

46. The Solicitation Statement states that the Company entered into confidentiality agreements and/or non-disclosure agreements ("NDAs") with various prospective buyers.

47. The Solicitation Statement, however, fails to disclose whether Castle Brands entered into any confidentiality agreement or NDA that contained a standstill provision with "don't ask, don't waive" ("DADW") provisions (including their time of enforcement) that would preclude potential buyers from making a superior offer for the Company.

48. Defendants began to speak on this subject by revealing that Castle Brands' own confidentiality agreement with Pernod contains a standstill provision.[4] Defendants, therefore, had a duty to disclose and should disclose whether Castle Brands' other confidentiality agreements and NDAs contain standstills with DADW provisions.

49. Without this information, Castle Brands shareholders may have the mistaken belief that potential buyers are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Castle Brands shareholder would want to know, prior to tendering their shares to Pernod, whether other potential buyers are or were foreclosed from submitting a superior proposal.

50. The above-referenced omitted information, if disclosed, would significantly alter

---

[4] Specifically, the Solicitation Statement provides that "[t]he Confidentiality Agreement [between Castle Brands and Pernod] ***contains customary standstill provisions*** that terminate if any person or group (other than the Company or an affiliate of the Company) acquires or enters into a definitive agreement with the Company to acquire more than 50% of the outstanding shares of the Company's common stock or assets of the Company representing more than 50% of its consolidated earning power, or a third party makes a tender offer for more than 50% of the outstanding shares of the Company's common stock and the Company recommends to its shareholders the acceptance thereof in a published statement on Schedule 14D-9. The standstill provisions terminated upon the Company's entry into the Merger Agreement." *See* Solicitation Statement at 4 (emphasis added).

the total mix of information available to Castle Brands shareholders.

### 4. Material Omissions Concerning Perella Weinberg's Conflicts of Interest

51. In late 2018, the Company nearly consummated a three-party deal with Pernod and Company Three at a price of $1.48 per share. Company Three, however, apparently backed out of the deal, prompting the Company to terminate the process. At that time, on or around December 10, 2018, the Company terminated its engagement letter with Perella Weinberg.

52. Then, in April 2019, Perella Weinberg was involved in discussions with Pernod concerning a possible transaction to purchase Castle Brands. It is unclear how and to what extent Perella Weinberg performed work to achieve this possible deal between December 2018 and April 2019.

53. The Solicitation Statement then indicates that in late July 2019—seven months after Perella Weinberg's engagement was terminated and three months after it apparently engaged with Pernod on the Company's behalf—Perella Weinberg disclosed to the Company's management that it had been retained by Pernod to advise Pernod regarding the possible disposition of a brand. According to the Solicitation Statement, Pernod retained Perella Weinberg after the termination of the sales process in the Fall of 2018 but before the sales process resumed in 2019. The Board then determined it would authorize the Company's management to re-engage Perella Weinberg as its financial advisor, and engage a second financial advisor in an apparent effort to cleanse the process. More specifically, the Solicitation Statement provides, in relevant part:

> In the last week of July 2019, the Company's management was advised by representatives of Perella Weinberg it had been retained by Pernod Ricard after the termination of the process in the Fall of 2018 and before the process resumed in 2019 to independently advise Pernod Ricard regarding the possible disposition of a brand that is unrelated to the potential acquisition of the Company by Pernod Ricard. As a result, the Board determined it would authorize the Company's management to re-engage Perella Weinberg as its financial advisor and also engage another financial advisor. The

>Company engaged Houlihan Lokey Capital, Inc. ("Houlihan") as a second financial advisor.

54. The Solicitation Statement, however, fails to disclose sufficient detail for Castle Brands shareholders to understand the extent of this conflict. For example, the Solicitation Statement fails to disclose the date that Perella Weinberg was retained by Pernod, and to what extent Perella Weinberg was advising Pernod on various matters after Pernod expressed a renewed interest in acquiring Castle Brands in April 2019.

55. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Castle Brands shareholders

**5. Material Omissions Concerning Perella Weinberg's and Houlihan Lokey's Potential Conflicts of Interest**

56. The Solicitation Statement omits material information concerning potential conflicts of interest involving Perella Weinberg and Houlihan Lokey.

57. The Solicitation Statement provides that "Perella Weinberg and its affiliates are currently providing investment banking services to [Austin] on matters unrelated to the Transaction for which it expects to receive compensation."

58. The Solicitation Statement, however, fails to disclose the nature of these investment banking services as well as the amount of compensation Perella Weinberg expects to receive for providing such services to Austin.

59. The Solicitation Statement provides that Houlihan Lokey "acted as a financial advisor to Ladenburg Thalmann Financial Services Inc. [] in connection with Ladenburg's repurchase of a substantial [sic] majority of the shares held in Ladenburg by [Defendant] Frost and his affiliates, [] then the largest shareholder of Ladenburg and currently the largest shareholder of the Company."

60. The Solicitation Statement, however, fails to disclose whether Houlihan has performed services for any parties to the Proposed Transaction or their affiliates, as well as the timing and nature of such services and the amount of compensation Houlihan received or expects to receive for such services.

61. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis. thereto

62. The omission of the above-referenced information renders the Solicitation Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to Castle Brands shareholders.

## COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

63. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64. Section 14(e) of the Exchange Act states, in relevant part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

65. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section

14(e) of the Exchange Act.

66. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

67. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

68. Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

69. By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

70. Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

### COUNT II
### For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### Against All Defendants

71. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

72. Defendants caused the Solicitation Statement to be issued with the intent to solicit shareholder support for the Proposed Transaction.

73. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section

14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

74. SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

75. In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

> Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

76. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

77. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

17

78. Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

79. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

## COUNT III
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

80. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

81. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

82. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

83. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

84. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

85. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

86. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C. Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 18, 2019          Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*